UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANTHONY PETERSON,

    Plaintiff,

v.

PACIFIC MARITIME ASSOCIATION, et al.,

    Defendants.

CASE NO. C07-783JLR

ORDER

This matter comes before the court on Defendant Pacific Maritime Association's ("PMA") motion for summary judgment (Dkt. # 41). Having reviewed the papers submitted by the parties and heard the argument of counsel, for the reasons that follow, the court GRANTS the motion for summary judgment.

## I. BACKGROUND

Defendant Pacific Maritime Association ("PMA") serves as a collective bargaining agent for its members, who are steamship, stevedoring and marine terminal operating companies on the West Coast. (Declaration of Joseph T. Weber ("Weber Decl.") (Dkt. # 42) ¶ 2.) Longshore workers, such as Plaintiff Anthony Peterson, load and unload cargo aboard ocean-going vessels for the employer-members of the PMA. (*Id.*)

ORDER – 1

Longshore workers generally receive daily assignments through the dispatch halls to different PMA-employers. (Weber Decl. ¶ 3.) Priority in dispatch is given to Class A registered workers followed by Class B limited registrants, followed by "casuals." (*Id.*) "Casual" workers are divided into "unidentified casuals" and "identified casuals." (*Id.*) "Unidentified casuals" are the newest workers on the waterfront. (*Id.*) In order to be dispatched, an "unidentified casual" must pass a preemployment drug screen. (*Id.*) An "unidentified casual" can become an "identified casual" based on their hours of experience in waterfront work. (*Id.*) An "identified casual" can progress to a Class B limited registrant after passing a drug test and presumably after gaining more experience. (*See id.*)

A collective bargaining agreement negotiated by PMA and the International Longshore and Warehouse Union covers longshore work. Union and management representatives form a Joint Coast Labor Relations Committee ("CLRC") which along with the local labor relations committees at each port regulates labor relations at the various ports on the West Coast. (Weber Decl. ¶ 4.) The CLRC issues rules regarding drug and alcohol testing requirements which are set forth in the Coastwise Rules Covering Registration and Deregistration - Longshoremen/Clerks ("Coastwise Rules") and in minutes of the meetings of the CLRC. (*Id.*) In addition to a "preeemployment" screen, Section 6.23 of the Coastwise Rules provides that a candidate seeking addition to the list of Class B registrants shall be required to pass a drug and alcohol screening test. (Weber Decl., Ex. B.) Drug testing is also required when a longshore worker applies for skill training on equipment. (*See* Weber Decl., Ex. D.)

Depending on a longshore workers' current classification, different policies apply when a drug test is failed. Section 4.2 of the Coastwise Rules provides that unidentified casuals who fail a drug test "shall have their dispatching hall privileges revoked

ORDER – 2

immediately." (Weber Decl., Ex. B.)  In the past, the CLRC has denied requests of unidentified casuals to retake the drug and alcohol test citing "previous CLRC guidelines" as well as Section 4.2 of the Coastwise Rules.  (Weber Decl., Ex. I.)  If a worker seeking to progress from identified casual worker status to a Class B Registrant fails the drug screening, Section 6.23 of the Coastwise Rules provides that such worker "shall" have his casual privileges suspended.  (Weber Decl., Ex. B.)  Joseph Weber, the Pacific Northwest Area Manager for PMA states that "[t]here is a long history of strict enforcement of the drug-and-alcohol policies, which require revocation of dispatch privileges, without an opportunity to retest, of casuals who fail . . . the drug screen for 'B' registration." (Weber Decl. ¶ 7.)  For identified casuals who are screened for skill training purposes, a retest is allowed 30 days after the failed test.  (*See* Weber Decl., Ex. E.)  Additionally, CLRC allows certain individuals, including identified casuals, who provide evidence of at least one year of sobriety and meet certain other requirements to be reinstated through what they term the "14-99" program.  (*See* Weber Decl., Ex. F.)

Mr. Peterson was an identified casual worker applying for B registration in the industry when he failed his drug test.  (*See* Compl. (Dkt. # 3) ¶ 1.)  Mr. Peterson's sample tested positive for cocaine.  (*See* Declaration of Sandra Starkey ("Starkey Decl.") (Dkt. # 43), Ex. A.)  Mr. Peterson was informed by letters dated December 28 and 29, 2004 that he was placed "on permanent no dispatch to all longshore and clerk jobs" and "no dispatch to all work" because of the positive result.  (Starkey Decl., Exs. B-C.)  Mr. Peterson declined to have the remaining portion of his sample retested because he believed that the entire sample was "tainted."  (Compl. ¶ 5; Weber Decl. ¶ 10.)

After receiving a letter from Mr. Peterson's union, PMA agreed to have a third-party review the drug-testing process that resulted in Mr. Peterson's positive drug test. (*See* Declaration of Thomas Edwards ("Edwards Decl.") (Dkt. # 44) ¶¶ 3-5.)  The third-

ORDER – 3

party, Naresh C. Jain, determined that the proper chain of custody procedures were followed, that all instruments were properly calibrated and maintained and that "[e]xtensive quality controls both open and blind were used to insure the accuracy of the final test result." (Declaration of Naresh C. Jain ("Jain Decl.") (Dkt. # 47), Ex. A.) Dr. Jain also opined that the medications being taken by Mr. Peterson at the time of the test would not "account for his testing positive for cocaine." (Jain Decl. ¶ 6.)

## II. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

Mr. Peterson argues that PMA's refusal to allow him to take a retest and employ him after he failed his drug test violated Title VII of the Civil Rights Act of 1964. Mr. Peterson bases his claim on the allegation that PMA allowed similarly situated employees outside of Mr. Peterson's protected class to be retested. In a Title VII case the "plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." *Wallis v. J.R. Simplot*

ORDER – 4

*Co.*, 26 F.3d 885, 889 (9th Cir. 1994). In order to establish a prima facie case, Mr. Peterson must demonstrate that (1) he belongs to a protected class; (2) he was subject to an adverse employment action; and (3) similarly situated individuals outside his protected class were treated more favorably. *See Chuang v. Univ. of California Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000).

For purposes of this motion, PMA does not contest that Mr. Peterson satisfies the first two elements of a prima facie case. (*See* Mot. (Dkt. # 41) at 9.) It contends that Mr. Peterson's claim fails because he cannot demonstrate that similarly situated workers outside his protected class were treated more favorably. Mr. Peterson responds that non-African American employees were treated less severely under similar circumstances. The court determines that Mr. Peterson has not demonstrated a prima facie case of discrimination.

Mr. Peterson contends that two Caucasian longshoremen, Sam Black and Aaron Gallardo, who failed their drug screens were granted standing as Class A registered workers. In support of these assertions, Mr. Peterson offers the declarations of James Barnett, Abin-Bola Nellams, Alex Raptis and Richard D. Woods. Mr. Barnett states that "Mr. Sam Black confirmed that he had failed a drug test with PMA and the ILUW . . . Sam Black is now a fully registered 'A' man . . . ." (Declaration of James Barnett (Dkt. # 50).) Mr. Nellams states that "Sam Black spoke to me regarding his failure of Drug testing from ID Casual to B status Registered during August 2006 AND conversely Advanced through retest during Screening Process [sic]." (Declaration of Abin-Bola Nellams (Dkt. # 50).) Mr. Raptis states: "Its [sic] been past practice of letting other[] ID.s retake their physical after failure such as Aaron Gal[l]ardo and Ray Gripe[1] when I

---

[1] Mr. Peterson does not appear to rely on Mr. Gripe as a comparator.

ORDER – 5

was [a] casual I.D. in 2006 and now they are (a) men." (Declaration of Alex Raptis (Dkt. # 50).) Finally, Mr. Woods states: "I know for a fact that both Aaron Gallardo and Sam Black are White Longshoreman[. They] spoke to me in 2006 about allegedly testing positive for an illegal drug or substance during the screening process. Both of them told me they were allowed to retest and remain in the employment of PMA as Longshoreman both are now registered A men." (Declaration of Richard D. Woods (Dkt. # 50).)

PMA responds first by moving to strike the four declarations submitted by Mr. Peterson citing Federal Rule of Civil Procedure 56(e)(1) which provides in relevant part: "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." PMA contends that the declarations are not based on personal knowledge of "any one else's drug testing" or decision to allow someone to take a retest and that the declarations contain inadmissable hearsay. (Reply (Dkt. # 51) at 4.) While it is true that the declarants have not stated that they had direct access to the test results, they each assert that they were told by those who failed the test that a failure had occurred. It is also true that the declarants do not assert that they were involved in the decision-making process regarding whether a retest would be allowed; however, one of the declarants does state that Mr. Gallardo and Mr. Black told him that they were allowed to retest after failing their drug tests. Assuming for the moment these declarations are otherwise valid and viewing the evidence in the light most favorable to Mr. Peterson, there is a question raised as to why these individuals, who also failed drug tests, were allowed to continue working in the industry. The court declines to exclude the declarations on the basis that they are not based on personal knowledge regarding drug-test results or retesting.

ORDER – 6

PMA's second argument, regarding hearsay, does present a valid reason to exclude the declarations. Each declarant states that he spoke with one of the men who allegedly failed a drug test and that individual informed the declarant that he had failed the test. Additionally, one declarant states that two of the men told him they were allowed to take a retest. Unless a hearsay exception applies, this is not the type of evidence that would be allowed at trial. *See* Fed. R. Evid. 802. Mr. Peterson has not argued that any hearsay exception applies here. On this basis, the court strikes the declarations.

At oral argument on this motion, counsel for Mr. Peterson stated that he had recently spoken to Mr. Black and he believed that he would be able to obtain a declaration from Mr. Black regarding the events that led to Mr. Black's discharge and reinstatement. Mr. Peterson made a motion under Federal Rule of Civil Procedure 56(f) to allow him to obtain Mr. Black's declaration. The court granted the motion and Mr. Peterson subsequently submitted a declaration from Mr. Black. Mr. Black states that in 1996 while working as an identified casual he was eligible to be moved to the registered B list for dispatch purposes. (Declaration of Sam Black ("Black Decl.") (Dkt. # 55) ¶ 3.) Mr. Black took the drug screen but did not pass and was not moved up to B registered status. (*Id.*) After failing the drug test Mr. Black voluntarily entered into a two-year out-patient drug treatment program. (Black Decl. ¶ 4.) After completing the program, Mr. Black started attending Alcoholics Anonymous ("AA") meetings and started his own business. (Black Decl. ¶¶ 5-6.) At some point, Mr. Black got a sponsor from AA to vouch for his attendance at AA meetings. (Black Decl. ¶ 7.) Mr. Black then submitted his records regarding his drug treatment, attendance at AA meetings and his prior employment to the union in order to have his dispatch privileges reinstated. (Black Decl. ¶ 8.) After the union reviewed the documents, Mr. Black was reinstated to the identified casual list and was required to stay on that list for one year while he was subject to

ORDER – 7

random drug tests. (Black Decl. ¶ 9.) Mr. Black passed each drug test. (*Id.*) Mr. Black was then moved to B registered status and subsequently moved up to the A list where he remains today. (Black Decl. ¶ 10.)

Even with the additional declaration, Mr. Peterson has still failed to carry his burden of making out a prima facie case. PMA has offered evidence that Mr. Black was not similarly situated to Mr. Peterson. Mr. Black, like Mr. Peterson, failed the drug test in association with elevation from casual to B registered status. (Second Declaration of Joseph T. Weber (Dkt. # 52) ¶ 11.) However, unlike Mr. Peterson, Mr. Black, after several years, took advantage of the 14-99 program and was reinstated. (*Id.*) Mr. Peterson has refused to participate in the 14-99 program. (*Id.*) The court determines that Mr. Black and Mr. Peterson are not similarly situated and for that reason Mr. Peterson has failed to demonstrate a prima facie case of discrimination.

Reviewing all the evidence before it, the court determines that Mr. Peterson has produced no competent evidence demonstrating that similarly situated individuals outside his protected class were treated more favorably. The court grants summary judgement for PMA and dismisses Mr. Peterson's complaint.

### III.  CONCLUSION

For the foregoing reasons, the court GRANTS PMA's motion for summary judgment and dismisses Mr. Peterson's complaint.

DATED this 11th day of March, 2009.

JAMES L. ROBART
United States District Judge

ORDER – 8